IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DENNIS E. PERRIN,

        Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　No. CV-13-0624 JB/CG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on Plaintiff Dennis Perrin's *Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum* ("Motion"), filed on March 17, 2014, (Doc. 25); *Defendant's Response to Plaintiff's Motion to Reverse the Administrative Agency Decision* ("Response"), filed on May 16, 2014, (Doc. 27); and Mr. Perrin's *Reply to Defendant's Response to Plaintiff's Motion to Reverse or Remand Administrative Agency Decision* ("Reply"), filed on May 29, 2014, (Doc. 28).

On January 6, 2009, Mr. Perrin filed an application for supplemental security income alleging disability since June 1, 2001. Administrative Record ("AR") at 145. His application was denied on April 29, 2009, and also upon reconsideration on July 8, 2010. AR at 13. Mr. Perrin had a hearing on May 30, 2012 before Administrative Law Judge ("ALJ") Ann Farris. AR at 13. The ALJ issued her opinion on June 7, 2012, determining that Mr. Perrin was not disabled. AR at 13-21. Mr. Perrin applied for review by the Appeals Council and submitted additional evidence of disability which had not been available at the time of the hearing, but the Appeals Council denied the request for review making the decision of the ALJ the final decision of the Commissioner for purposes of this appeal. AR at 1-6

Mr. Perrin asserts that the Appeals Council committed legal error by failing to accept and consider the additional evidence.  Mr. Perrin also alleges that the ALJ erred at steps four and five, and that the ALJ erred in failing to rule on his request to reopen a prior application.

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record.  Because the Appeals Council failed to accept and consider some of the additional evidence, pursuant to 42 U.S.C. § 405(g) (sentence four), the Court recommends that the Motion be **GRANTED** and the case be **REMANDED** for further proceedings.

## I.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied.  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.   A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals

Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits (DIB) and supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v.*

*Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity;" that (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience.  *Id*.

### III. Background[2]

#### a. The ALJ's Decision

At step one, the ALJ found that Mr. Perrin had not engaged in substantial gainful activity since January 6, 2009, the application date.  AR at 15.  Next, the ALJ found that Mr. Perrin had the following severe impairments: diabetes with neuropathy, obstructive sleep apnea, and obesity.  AR at 15.  She noted that despite Mr. Perrin's diagnosis of Guillain-Barre syndrome as a child, there was no objective medical evidence indicating that the condition caused more than minimal limitations of his ability to work.  AR at 16.  The ALJ also explained that there were "no records from mental health providers, no discussion of mental health complaints to his medical providers in the medical evidence, and two psychological consultative examinations by different examiners that both find not mental health diagnosis [sic]."  AR at 16.  Based on this, the ALJ found that Mr. Perrin

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.
[2] The Court has reviewed the entire record, but includes only the factual background relevant to the legal issues addressed herein.

did not have a severe mental health impairment.  AR at 16.  At step three, the ALJ determined that Mr. Perrin did not have an impairment or combination of impairments that meet or medically equal a listed impairment.  AR at 16.

The ALJ found that Mr. Perrin had the residual functional capacity ("RFC") to perform sedentary work as defined in the regulations with the additional limitations that he could frequently, but not constantly, handle and finger and must avoid exposure to hazardous conditions such as unprotected heights and dangerous moving machinery.  AR at 16.  In determining this RFC, the ALJ considered Mr. Perrin's testimony at the hearing and the medical and opinion evidence in the record.  AR at 16-19.

The ALJ found that some of Mr. Perrin's testimony was "so specific that [the responses] strongly suggested that [Mr. Perrin] was exaggerating symptoms and limitations, specifically that he has a panic attack every day, must elevate his feet twice a day, twice a day cannot get his fingers to respond, and trips and falls three times a day."[3]  AR at 19.  Additionally, she noted that his testimony that he played video games for hours at a time was inconsistent with his allegations.  AR at 19.  Ultimately, the ALJ found Mr. Perrin credible to the extent that his statements were consistent with the RFC.  AR as 19.

The opinions of the State agency medical and psychological consultants were given considerable weight.  AR at 18.  The ALJ specifically mentioned the findings of Amy Kogut, M.D., who examined Mr. Perrin in March 2009, and found that he had moderate limitations associated with his "poorly controlled diabetes, no limitations from his sleep apnea, and that [Mr. Perrin's] obesity is his primary problem."  AR at 18 (citing

---

[3] Many of Mr. Perrin's responses were not as specific as the ALJ states, as he modified them with "about." AR at 55.  For example, he testified that he had panic attacks "About once a day" and elevated his feet "About twice a day."  AR at 55.

5

Exhibit 5F). The ALJ adopted the physical RFC found by the State agency that Mr. Perrin was capable of sedentary work, though she added the manipulative limitations noted above. AR at 18.

The ALJ also briefly summarized the Mr. Perrin's medical records from First Choice Community Health Care. AR at 18-19. These records reflect that Mr. Perrin was treated for diabetes, sleep apnea, and obesity from February 2009 until October 2011. AR at 18. In 2009, Mr. Perrin's diabetes was not under control, though the records note improvement by June 2010. AR at 18. Mr. Perrin was referred to a neurologist, but did not pursue the referral; despite evidence that Mr. Perrin was unable to afford a visit to the neurologist, the ALJ inferred that his failure to follow-up was an indication that his symptoms were not as serious as alleged. AR at 18-19, 325.

After finding that Mr. Perrin had no past relevant work, the ALJ found that there are jobs that exist in significant numbers in the national economy that Mr. Perrin could perform. AR at 20. Relying on the testimony of the vocational expert, the ALJ found that Mr. Perrin could work as an addresser, an order clerk (food), or a charge account clerk. AR at 20. Based on these findings, the ALJ determined that Mr. Perrin was not disabled. AR at 21.

### b. New Evidence Submitted to Appeals Council

Mr. Perrin submitted reports from two different consultative examiners to the Appeals Council as part of his appeal. AR at 2, 6. The report from the consultative examination performed by Dr. John Vigil, dated June 6, 2012, was considered and made part of the record by the Appeals Council. AR at 2, 6. In its decision, the Appeals Council explained that it had "looked" at the report by Dr. Clifford O. Morgan, dated

August 2012, but determined that the new information was "about a later time."  AR at 2.

On August 3, 2012, Mr. Perrin underwent an examination with consulting doctor, Clifford O. Morgan, Ph.D.  AR at 342-355.  Dr. Morgan performed several tests in order to assess whether Mr. Perrin had any mental impairments, including intelligence assessments, depression and anxiety inventories, and a review of the medical records.  AR at 343.  During the mental status examination, Dr. Morgan found that Mr. Perrin struggled with his memory, fell asleep several times, and had poor eye contact and nonverbal communication, but was cooperative and "appeared to do his best on the evaluation tasks."  AR at 346.

Dr. Morgan found that Mr. Perrin's cognitive scores were above average, but that he met the criteria for a learning disability.  AR at 347-48.  Mr. Perrin was within the severe range for anxiety symptoms and within the moderate to severe range for depressive symptoms.  AR at 348.  Dr. Morgan noted that Mr. Perrin had a personality disorder with features of dependent, schizoid, and avoidant characteristics.  AR at 348.  He also found that Mr. Perrin had a sleep disorder more like narcolepsy than sleep apnea.  AR at 348.  Dr. Morgan explained that Mr. Perrin was limited in his manual dexterity due to his neurological problems secondary to Guillain-Barre and diabetes.  AR at 349.

On the medical assessment of ability to perform work-related activities form, Dr. Morgan found that Mr. Perrin was moderately limited in the following areas: his ability to remember locations and work-like procedures; his ability to carry out very short and simple instructions; his ability to carry out detailed instructions; his ability to work in coordination with or in proximity to others without being distracted by them; his ability to interact appropriately with the general public; his ability to accept instructions and

respond appropriately to criticism from supervisors; his ability to get along with coworkers without distracting them; his ability to respond appropriately to changes in the work place; his ability to travel in unfamiliar places or use public transportation; and in his ability to set realistic goals or make plans independently of others.  AR at 350-51.  Dr. Morgan found that Mr. Perrin was markedly limited in several areas, including: his ability to understand and remember detailed instructions; his ability to maintain attention and concentration for extended periods of time; his ability to perform activities within a schedule, maintain attendance and be punctual within customary tolerance; his ability to sustain an ordinary routine without special supervision; and his ability to complete a normal workday/week without interruptions from psychologically based symptoms.  AR at 350.

**IV.   Analysis**

Mr. Perrin asserts several grounds in support of his Motion to reverse the decision of the Commissioner and remand for further proceedings.  First, he argues that the Appeals Council erroneously declined to consider the new medical evidence from Dr. Vigil and Dr. Morgan.  (Doc. 25 at 19-20).  Second, he contends that the RFC finding is unsupported by the evidence because the ALJ failed to find any mental limitations and erred in her finding that Mr. Perrin could frequently handle objects.  (Doc. 25 at 22-24).  Third, Mr. Perrin maintains that the testimony of the vocational expert was unreliable.  Finally, he moves the Court to order that his prior application be re-opened on remand because the ALJ did not issue a ruling on this request, which was renewed during the hearing.  (Doc. 25 at 25).

*a. Appeals Council Error*

Mr. Perrin contends that the Appeals Council erred by failing to consider the

evidence that was submitted in support of the appeal, but did not exist at the time the ALJ issued her decision. (Doc. 25 at 19-20). The Commissioner responds that the Appeals Council properly explained that it had considered the new evidence but determined that there was no reason to change the ALJ's decision. (Doc. 27 at 5-9). Therefore, the Court must first decide whether the Appeals Council considered the evidence from Dr. Vigil and Dr. Morgan. If the Court answers in the negative, then it must determine whether the evidence should have been considered on *de novo* review. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003).

The Appeals Council must consider additional evidence if it is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision. 20 C.F.R. §§ 404.970(b), 404.976(b); *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). In the *Notice of Appeals Council Action*, the Appeals Council explained that it had "considered the reasons [Mr. Perrin disagreed] with the decision and the additional evidence listed on the enclosed Order of Appeals Council." AR at 1. Additionally, the Order of Appeals Council made the consultative examination by Dr. Vigil part of the record. AR at 6. It is the general practice in the Tenth Circuit to take the Appeals Council at its word. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). In this case, the Appeals Council stated that it considered the evidence from Dr. Vigil and made this evidence part of the record, but found no basis to change the ALJ's decision. This does not amount to legal error.

The Appeals Council did not include Dr. Morgan's report in the administrative record it reviewed because it found evidence to be "about a later time." AR at 2. Because it found that the information was not temporally relevant, under the regulations

and *Chambers*, the Appeals Council was unable to consider the records from Dr. Morgan. *See Padilla v. Colvin*, No. 12-2097, 525 Fed. Appx. 710, 712 (10th Cir. 2013) (unpublished). Although the Commissioner argues that the Appeals Council considered all of the new evidence, she does not explain why Dr. Morgan's report was treated differently than Dr. Vigil's report. Moreover, the Commissioner does not address the holding of *Padilla*.

If the Appeals Council had at least accepted Dr. Morgan's records into the administrative record it reviewed, then that would have been an indication that the Council considered the records. *See Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011); *Martinez v. Barnhart*, 444 F.3d 1208, 1207-08 (10th Cir. 2006). However, the Appeals Council declined to accept any of Dr. Morgan's records into the administrative record. *See* AR at 2, 6. Therefore, the Court concludes that the Appeals Council did not consider any of Dr. Morgan's records, and must undertake a *Chambers* analysis *de novo*. *See Threet*, 353 F.3d at 1191.

Mr. Perrin argues that the report from Dr. Morgan is new, material, and chronologically relevant and therefore, as a matter of law, the Appeals Council erred by failing to consider it. (Doc. 25 at 19-20). The Commissioner does not fully address the argument that the Appeals Council should have considered Dr. Morgan's report in light of the *Chambers* factors, but essentially asserts that the Appeals Council error was harmless because the report would not change the ALJ's decision. (Doc. 27 at 6-9). The Court considers this argument to the extent it relates to the materiality of the evidence.

To reiterate the *Chambers* requirements, the Appeals Council must consider

additional evidence if it is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision.   20 C.F.R. §§ 404.970(b), 404.976(b).   Evidence is "new" within the meaning of Sections 404.970(b) and 416.1470(b) if it is not "duplicative or cumulative."   *Threet*, 353 F.3d at 1191.   Dr. Morgan made his assessment two months after the ALJ made her decision. Additionally, Dr. Morgan's records indicate Mr. Perrin's condition was more severe than demonstrated in the records before the ALJ.   For example, Dr. Morgan opined that Mr. Perrin might have narcolepsy, a more severe condition than sleep apnea.   He also evaluated Mr. Perrin's mental and emotional state and elaborated on his condition.   Therefore, the Court finds that Dr. Morgan's assessment contains new information.

Evidence is material to the determination of disability if there is a reasonable possibility it would have changed the outcome. *See Threet*, 353 F.3d at 1191.   Dr. Morgan found that Mr. Perrin had a personality disorder, severe anxiety, and moderate to severe depressive symptoms.   Based on these findings, Dr. Morgan concluded that Mr. Perrin had several moderate and severe mental impairments that would affect his ability to work.   The ALJ found that Mr. Perrin had no severe mental impairments, despite some evidence that he was taking Prozac for depression at the time of the hearing.   Had the new evidence from Dr. Morgan been properly considered, the outcome may have been different because Dr. Morgan's findings augment Mr. Perrin's contention that he has mental impairments, which was completely dismissed by the ALJ.   Additionally, Dr. Morgan suggested that Mr. Perrin's sleep apnea was actually narcolepsy, a more severe impairment that could change his capacity to perform work.   This evidence could change the ALJ's findings at both steps three and four, which may have an impact on the ultimate

disability finding.

The Commissioner argues that the report is inherently unreliable because it was prepared at the behest of Mr. Perrin's attorney in support of his disability claim. (Doc. 27 at 6). As Mr. Perrin points out in his Reply, a doctor's opinion may not be rejected solely because it was prepared at the request of the claimant. *See Hinton v. Massanari*, 13 Fed. Appx. 819, 824-45 (10th Cir. 2001) (unpublished) (citing *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998). The Commissioner also maintains that Dr. Morgan's report is inconsistent with the record as a whole and points out a few alleged inconsistencies relating to Mr. Perrin's vision problems and different levels of detail of Mr. Perrin's medical history appearing in different examiner's reports. (Doc. 27 at 8-9). While these inconsistencies may be relevant to the weight allocated to Dr. Morgan's opinion, his report is not so inconsistent with the record as a whole that it is immaterial. An attempt by the Court to actually weigh and balance the evidence would usurp the role of the agency. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

New and material evidence is chronologically pertinent if it relates to the period on or before the date of the decision. *See O'Dell*, 44 F.3d at 858. Dr. Morgan considered Mr. Perrin's medical history, starting well before the ALJ's decision in June 2012. AR at 342-355. His detailed analysis chronicles and assesses Mr. Perrin's mental and physical well-being from his childhood up to the time of the examination. AR at 342-355. Dr. Morgan's assessment is focused on Mr. Perrin's mental health, including his anxiety and depression. These impairments were alleged before the ALJ, though she did not consider them severe. Moreover, mental health conditions are likely to be ongoing impairments and it is unlikely that Mr. Perrin developed his anxiety, depression, and

personality disorder in the two months between the ALJ's decision and Dr. Morgan's examination. Therefore, Council erred in determining the evidence was not temporally relevant.

The Court finds that the test laid out in *Chambers* has been satisfied and recommends that the Motion be granted so that the evidence in Dr. Morgan's reports may be considered by the Commissioner upon remand.

### b. Re-opening Prior Application

Mr. Perrin moved the Court to direct the ALJ to reopen his prior application for benefits because the ALJ failed to make a ruling when he renewed this request at the hearing. (Doc. 25 at 25). However, he has provided no legal authority or factual basis to support this request. The Commissioner responds with a citation to the regulations that would govern such a request, and points out, correctly, that Mr. Perrin has not made any showing that would justify reopening his prior application. (Doc. 25 at 14-16).

To the extent that Mr. Perrin is arguing that the ALJ erred in failing to rule on the request that his prior application be reopened, he has provided no authority showing that this is reversible error. Thus, this argument is not properly before the Court and is not considered here. Moreover, to the extent Mr. Perrin asserts that the remedy for the ALJ's failure to issue a ruling is to reopen his prior application, he has provided no factual or legal basis on which the Court could grant relief.

A final disability determination can be re-opened by the agency, or at the request of the party under certain circumstances. 20 C.F.R. § 416.1487(b). The disability determination may be reopened under the following circumstances:

> (a) Within 12 months of the date of the notice of the initial determination, for any reason;
>
> (b) Within two years of the date of the notice of the initial determination if we find good cause, as defined in § 416.1489, to reopen the case; or
>
> (c) At any time if it was obtained by fraud or similar fault. In determining whether a determination or decision was obtained by fraud or similar fault, we will take into account any physical, mental, educational, or linguistic limitations . . . which you may have had at the time.

20 C.F.R. § 416.1488.

In his Reply, Mr. Perrin does not elaborate on the grounds for reopening his prior application in light of the regulations. Instead, he states that "[t]he Commissioner offers reasons why Mr. Perrin has not shown that reopening is appropriate, but those reasons were conducive to the taking of testimony at the hearing." (Doc. 28 at 8). He also argues that he would have been able to testify as to why he failed to appeal the decision on the first application. (Doc. 28 at 8). Mr. Perrin's vauge assertion that he might have been able to offer reasons to explain his failure to appeal the prior decision is insufficient to show good cause for reopening the application. Mr. Perrin has not alleged that the decision was obtained by fraud. Ultimately, Mr. Perrin has failed to meet his burden to show that his prior application should be reopened because he has not offered any specific factual or legal authority. Therefore, the Court does not recommend granting this relief.

### c. Remand to an ALJ other than ALJ Farris

Mr. Perrin has also moved the Court to order that any proceedings on remand occur before an ALJ other than ALJ Farris. However, he has not provided any legal authority demonstrating that the Court can dictate to the Commissioner that the case be heard by a different ALJ. Thus, he has failed to carry his burden and the Court does not

recommend granting this relief.

### V. Recommendation

The Court finds that the new evidence from Dr. Clifford Morgan that was submitted with plaintiff's administrative appeal should have been considered by the Appeals Council. The omission constitutes substantial legal error necessitating a remand for further proceedings consistent with the discussion herein. The Court does not decide the step four and five errors raised by Mr. Perrin, as these matters are mooted by the proceedings conducted or the disposition reached on remand.   The Court recommends that Mr. Perrin's Motion be denied as to his requests to reopen his prior application and for an order directing that his case be heard on remand by an ALJ other than ALJ Farris.

**IT IS THEREFORE RECOMMENDED** that Mr. Perrin's *Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum*, (Doc. 25), be **GRANTED** as outlined above and that this case be **REMANDED** to the Commissioner for further proceedings.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).   **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.   If no objections are filed, no appellate review will be allowed.**

---

                                                              _____
                                                              THE HONORABLE CARMEN E. GARZA
                                                              UNITED STATES MAGISTRATE JUDGE